UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **TOBIAS MOONEYHAM**, *individually and on behalf of all similarly-situated persons*<br><br>Plaintiff<br><br>v.<br><br>**AVI FOOD SYSTEMS, INC.**<br><br>Defendant | Case No. 1:17-cv-103<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

### INTRODUCTION

Plaintiff Tobias Mooneyham ("Plaintiff" or "Mooneyham"), on behalf of himself and on behalf of all similarly-situated persons, for his Complaint against Defendant AVI Food Systems, Inc. ("Defendant" or "AVI"), alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (the "FLSA"), on behalf of all current and former employees denominated by Defendant as "Supervisors" or employees holding comparable positions with different titles who work or worked for the Defendant within the United States at any time during the last three years (the "Collective"). AVI violated the FLSA by misclassifying Mr. Mooneyham and the members of the Collective as exempt from the FLSA's overtime provisions, and failing to pay them overtime compensation for hours worked over 40 in a single workweek.

2. Plaintiff also bring this action under Federal Rule of Civil Procedure 23 on behalf of all current and former "Supervisors" or employees holding comparable positions with different titles who work or worked for the Defendant within the State of Ohio at any time during the last two years (the "Ohio Class"). AVI violated the Ohio Minimum Wage Act, O.R.C. § 4111.01 *et seq.* ("Ohio Wage Laws"), by misclassifying Mr. Mooneyham and the members of

the Ohio Class as exempt from Ohio Wages Laws overtime provisions, and failing to pay them overtime compensation for hours worked over 40 in a single workweek.

## THE PARTIES

3. Plaintiff Mooneyham is an Ohio citizen who resides in Mansfield. He has worked for Defendant AVI since approximately September 10, 2014. From his start date until approximately November 2016, Mr. Mooneyham was employed as a "Supervisor" in AVI's Richland County branch location; misclassified as exempt from overtime compensation; paid a salary; and regularly worked in excess of 40 hours per workweek.

4. Defendant AVI is an Ohio for-profit corporation which operates a branch location in Richland County. AVI is the largest independently-owned food service company in the United States and employs more than 5,000 people. One of the company's major businesses is the servicing of vending machines.

## JURISDICTIONAL ALLEGATIONS

5. This Court has subject matter jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. The exercise of supplemental jurisdiction over the state-law claim is appropriate under 28 U.S.C. § 1367 because it forms part of the same case or controversy as the federal claim.

6. This Court has personal jurisdiction over the Defendant because it is an Ohio citizen and resident, and transacts substantial business in this state.

7. This Court is a proper venue for this action under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in Richland County, Ohio, within the Northern District of Ohio.

8. This Court is the proper division for this action under Local Rule 3.8(a) because the Plaintiff was employed in the Richland County branch location, the acts giving rise to his claims occurred in Richland County, and the Defendant is subject to personal jurisdiction in Richland County.

**FACTUAL ALLEGATIONS**

9. To conduct the company's vending business, AVI operates branch locations across the country. Human resources, management, administration, and support services are provided to the branches by AVI's corporate offices, which also set uniform policies and procedures for use in the branches.

10. District Managers manage several branches in the same geographic region. Branch Managers, who each report to a District Manager, manage individual branches. Operations Managers, who each report to a Branch Manager, also manage individual branches. This Complaint refers to District, Branch, and District Managers collectively as "Managers." AVI places managerial and executive responsibilities and authority in these Managers.

11. AVI's vending business is carried out by hourly employees called "Vend Drivers" and "CSAs." A Vend Driver drives a company vehicle (a car or box truck) to various vending locations along a route, stocking vending machines with the merchandise carried in the vehicle (this is sometimes called vending "out of the truck"). A CSA drives a company car to various vending locations along a route, stocking vending machines with merchandise that has been delivered by another vehicle to the location (this is sometimes called vending "out of the closet"). Vend Drivers and CSAs are referred to collectively in this Complaint as "Venders."

12. In order to avoid having to pay Venders overtime premium compensation, AVI tries to keep them from working more than 40 hours per week—and will impose discipline if Venders work overtime. However, AVI has designed the vending routes such that they are extremely difficult, if not impossible, to complete in less than 40 hours per week.

13. To solve this dilemma—of either having to pay overtime to the non-exempt Venders or their failing to complete their routes in 40 hours or less—AVI created a job title that AVI classifies as exempt from overtime, but whose primary duties are the same as the non-exempt Venders—to service the vending routes. There is one position called "Route Supervisor," which ostensibly corresponds to the Vend Drivers, and a second title called "CSA Supervisor,"

which ostensibly corresponds to the CSAs. In practice, there is no difference in the job duties and responsibilities of the so-called "Supervisor" positions.

14. Supervisors do not have any managerial authority or discretion, and instead are regularly assigned vending routes. The work associated with a vending route consists of manual labor, driving a vehicle, carrying and stocking merchandise, and servicing vending machines.

15. Managers assigned Supervisors vending routes each day. The primary duty of Supervisors is to perform work that is not different than the primary duties of the non-exempt hourly Venders. In other words, AVI has made the vending routes Supervisors' primary duties.

16. Supervisors do not have authority to hire employees. Any Supervisor's involvement in the hiring process is limited to sitting in on an interview conducted by a Manager. And Managers do not regularly solicit or follow recommendations from Supervisors on hiring.

17. Supervisors do not have authority to terminate employees. Any Supervisor involvement in the employee disciplinary process is limited to signing "counseling" documents, as directed by, or prepared by, a Manager, and sitting in on "counseling sessions" conducted by a Manager. Managers do not regularly solicit or follow recommendations from Supervisors on terminations and discipline.

18. Supervisors do not have authority to promote, demote, change the rates of pay, or otherwise affect the working conditions of Venders.

19. Supervisors do not have any managerial authority over corporate policy-making, or the enforcement of, or compliance with, AVI corporate policies and procedures; they do not exercise meaningful judgment; and they are governed by uniform corporate policies over which they have no discretion.

20. Despite their job title, Supervisors do not actually supervise, manage, or direct the work of any AVI employees. The vending routes and employee schedules are created by AVI's corporate offices or by the company's Managers. Supervisors are not responsible for training or evaluating AVI employees.

21. AVI advises Supervisors to expect to work a regular schedule of 40 hours per week, with only an occasional weekend day. In practice, however, Supervisors regularly work an average of approximately 55 hours per week.

22. Upon information and belief, AVI did not perform a person-by-person analysis of the job duties of Supervisors when making the decision to classify all of them uniformly as exempt from the overtime protections of the FLSA and the Ohio Wage Laws.

23. Upon information and belief, AVI did not provide sufficient resources for non-exempt employees to complete their routes within 40-hours in a workweek, which necessarily led the Supervisors to cover their routes and perform the same primary duties and responsibilities as the non-exempt Venders. Defendant knew or recklessly disregarded the fact that failing to provide these sufficient resources resulted in Plaintiff and other similarly-situated Supervisors (who were not paid overtime) to work more than 40 hours in a workweek and primarily perform manual and non-exempt duties during their workweeks, without receiving overtime compensation. This allowed Defendant to avoid paying additional wages (including overtime) to the non-exempt Venders.

24. Upon information and belief, Defendant acted willfully and knew, by virtue of the fact that the Managers (AVI's authorized agents) actually saw Plaintiff and other similarly-situated Supervisors perform primarily manual labor and non-exempt duties, that Supervisors primarily performed manual labor and non-exempt duties. Indeed, AVI is the largest independently-owned food service company in the United States, a substantial corporate entity aware of its obligations under the FLSA and Ohio Wage Laws. Defendant's willful or reckless disregard of the applicable wage and hour laws was pursuant to a centralized, company-wide policy, pattern, and/or practice of attempting to minimize labor costs by violating the FLSA and Ohio Wage Laws.

25. As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a policy, pattern and/or practice of violating the FLSA and Ohio Wage Laws. This policy, pattern and/or practice includes, but it is not limited to the foregoing

knowledge of its obligations and the kind of work that Supervisors were, and have been, performing, and that, as a result, Defendant has been:

    a.    willfully misclassifying Supervisors as exempt from the overtime requirements of the FLSA and Ohio Wage Laws;

    b.    willfully failing to pay Supervisors overtime wages for hours they worked in excess of 40 hours per week; and

    c.    willfully failing to provide enough resources for their non-exempt employees to perform their duties and responsibilities.

26. Defendant's willful violations of the FLSA and the Ohio Wage Laws are further demonstrated by the fact that Defendant failed to maintain accurate and sufficient time records for Supervisors. Defendant acted recklessly or in willful disregard of the FLSA and Ohio Wage Laws by instituting a policy and/or practice that did not allow Supervisors to record all hours worked.

27. Due to the foregoing, Defendant's failure to pay overtime wages for work performed by Supervisors in excess of 40 hours per workweek was willful and has been widespread, repeated, and consistent.

### COLLECTIVE AND CLASS ALLEGATIONS

28. Plaintiff brings his claims under the FLSA on behalf of himself and the members of the Collective who elect to opt-in to this action. Potential members of the Collective are those persons who were labeled as a "Route Supervisor" or "CSA Supervisor," or employees holding comparable positions with different titles, who work or worked for the Defendant within the United States at any time during the three years prior to the filing of this Complaint through the date of final judgment (the "Collective").

29. Plaintiff and the members of the Collective are similarly situated in that they have substantially similar job duties and are subject to AVI's common compensation policies, patterns, and practices, including the misclassification of the Supervisor position as exempt from the overtime provisions of the FLSA.

30. AVI classified all Supervisors as exempt from coverage of the overtime provisions of the FLSA pursuant to a centralized, company-wide policy, pattern, and practice. AVI did not perform a person-by-person analysis of the job duties of Supervisors when making the decision to classify all of them uniformly as exempt from the overtime protections of the FLSA.

31. Plaintiff also brings his claims under the Ohio Wage Laws on behalf of himself and the members of the Class. Potential members of the Class are those persons who were labeled as a "Route Supervisor" or a "CSA Supervisor" or employees holding comparable positions with different titles, who work or worked for the Defendant within the State of Ohio at any time during the two years prior to the filing of this Complaint through the date of final judgment (the "Class").

32. The Class is so numerous that the joinder of all members is impracticable.

33. There is at least one question of law or fact common to the Class: for example, whether AVI misclassified Supervisors as exempt from the overtime provisions of the Ohio Wage Laws. This common question predominates over any questions regarding an individual member of the Class.

34. Mr. Mooneyham's claims are typical of the claims of the Class.

35. Mr. Mooneyham will adequately represent the Class.

36. A class action is superior to other available methods for the fair and efficient adjudication of the Ohio Wage Law claims.

**FIRST CAUSE OF ACTION**

37. This cause of action is for unpaid overtime wages under the FLSA, and is brought on behalf of Plaintiff and the Collective. Plaintiff Mooneyham has filed with this Complaint a

written consent to be a party to this action under 29 U.S.C. § 216(b).  This cause of action incorporates each of the other allegations contained in this Complaint.

38. At all relevant times, Plaintiff and the Collective were engaged in commerce; they were employees; and Defendant was their employer, all within the meaning of 29 U.S.C. §§ 206(e), 206(a), and 207(a), and therefore entitled to the overtime protections of the FLSA.

39. Defendant misclassified Plaintiff and the Collective as exempt from the FLSA's overtime provisions and failed to pay them an overtime premium for each hour worked in excess of 40 per workweek.

40. Defendant's misclassification was willful and the company failed to make a good-faith effort to comply with the FLSA.

41. As a result of Defendant's misclassification and failure to pay overtime compensation, Plaintiff and the Collective are entitled to recover unpaid overtime, liquidated damages, prejudgment interest, attorney's fees, costs, and any other appropriate remedies.

### SECOND CAUSE OF ACTION

42. This cause of action is for unpaid overtime wages under the Ohio Wage Laws, and is brought on behalf of Plaintiff and the Class.  This cause of action incorporates each of the other allegations contained in this Complaint.

43. At all relevant times, Plaintiff and the Class were employees of Defendant, and therefore entitled to the overtime protections of the Ohio Wage Laws.

44. Defendant misclassified Plaintiff and the Class as exempt from Ohio Wage Laws' overtime provisions and failed to pay them an overtime premium for each hour worked in excess of 40 per workweek.

45. As a result of Defendant's misclassification and failure to pay overtime compensation, Plaintiff and the Collective are entitled to recover unpaid overtime, damages, prejudgment interest, attorney's fees, costs, and any other appropriate remedies.

## PRAYER FOR RELIEF

Therefore, Plaintiff, on behalf of himself and on behalf of the Collective and Class defined in this Complaint, prays for the following relief:

A. Certification of the Collective under § 216(b) of the FLSA;

B. Certification of the Class under Fed. R. Civ. P. 23;

C. Unpaid overtime wages and the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

D. Liquidated damages on behalf of the Collective;

E. Pre- and post-judgment interest;

F. Attorney's fees and costs, including expert expenses; and

G. Such other relief, including declaratory, injunctive, and equitable relief, as provided by law or found proper by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

s/ Drew Legando
Drew Legando (0084209)
Jack Landskroner (0059227)
Edward S. Jerse (0013155)
Tom Merriman (0040906)
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@lgmlegal.com
   jack@lgmlegal.com
   edjerse@lgmlegal.com
   tom@lgmlegal.com

Seth R. Lesser*
Fran L. Rudich*
Christopher Timmel*
KLAFTER OLSEN & LESSER, LLP

Two International Drive, Suite 350
Rye Brooke, New York 10573
T. (914) 934-9200
F. (914) 934-9220
E. seth@klafterolsen.com
  fran@klafterolsen.com
  christopher.timmel@klafterolsen.com

Nicholas Migliaccio*
Jason Rathod*
MIGLIACCIO & RATHOD LLP
412 H Street NE, Suite 302
Washington, DC 20002
T. (202) 470-3520
E. nmigliaccio@classlawdc.com
  jrathod@classlawdc.com

* To seek admission *pro hac vice*

*Counsel for Plaintiff*