UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TOBIAS MOONEYHAM, *et al., etc.* <br><br> Plaintiffs <br><br> AVI FOODSYSTEMS, INC. <br><br> Defendant | Case No. 1:17-cv-00103 <br><br> Judge Donald C. Nugent |

**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, SERVICE PAYMENTS, AND CLAIMS ADMINISTRATION COSTS**

**I.   INTRODUCTION**

Plaintiffs Tobias Mooneyham, Derek Sleve, the FLSA Collective, and the Ohio Settlement Class (collectively, "Plaintiffs"), move for an order of this Court that

(1) Awards Plaintiffs' Counsel attorney's fees equal to 33 1/3% (*i.e.*, one-third) of the $1.5 million common-fund class-wide settlement—a fee award of $500,000. Plaintiffs' Counsel are Drew Legando and Jack Landskroner of Landskroner Grieco Merriman, LLC; Seth Lesser and Fran Rudich of Klafter Olsen & Lesser LLP; and Nicholas Migliaccio and Jason Rathod of Migliaccio & Rathod LLP (collectively, "Counsel").

(2) Awards Plaintiffs' Counsel reimbursement of $17,650 in litigation expenses and costs they incurred on behalf of Plaintiffs.

(3) Approves $5,000 service payments each to Tobias Mooneyham and Derek Sleve, the two named plaintiffs who initiated and prosecuted this action on behalf of the FLSA Collective and Ohio Settlement Class.

(4) Approves the reimbursement of up to $9,500 to RG/2 Claim, the Claims Administrator for this settlement, for the costs of such administration.

Each of these terms were part of the written Settlement Agreement between Plaintiffs and Defendant AVI Foodsystems, Inc., as well as the Notice that was sent to members of the FLSA Collective and Ohio Class.  This Court granted preliminary approval over the Settlement, including these terms in January (*see* ECF 52).  No collective or class member has objected to

any of these terms.

A Proposed Order granting the requested relief is being submitted with this motion. The Final Approval Hearing is scheduled for May 9.

## II.   LAW & ARGUMENT

### A.   A Common-Fund Attorney Fee of $500,000 Is Fair and Reasonable

The Court should determine the attorney's fees in this case using the percentage-of-the-fund method because the Settlement produced a common fund for the benefit of the Plaintiff Class. *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."); *see also Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share").[1] The Supreme Court explained that an attorney who "recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Rawlings v. Prudential-Bache Properties,* 9 F.3d 513, 516 (6th Cir. 1993) (trial court has a responsibility to ensure "that counsel is fairly compensated for the amount or work done as well as for results achieved"); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277 (S.D. Ohio 1996) (the common-fund doctrine is based in fairness, compensating attorneys who skill and effort helped create the fund and the benefits for others). To put this another way, the percentage method allows the court to "spread[] fees proportionately among those benefited by the suit." *Boeing*, 444 U.S. at 478; *see*

---

[1] *See also Swigart v. Firth Third Bank,* 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases); *accord, e.g., Feiertag v. DDP Holding, LLC,* No. 14 Civ. 2643, 2016 WL 4721208, at *1, *7 (S.D. Ohio Sept. 9, 2016); *Rotuna v. West Customer Mgmt. Grp., LLC*, 2010 U.S. Dist. LEXIS 58912, at * 20 (N.D. Ohio June 15, 2010); *Dillworth v. Case Farm Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446, at * 19 (N.D. Ohio Mar. 8, 2010).

*also Chesher v. Neyer*, No. 01 Civ. 0566, 2007 WL 4553908, at *1 (S.D. Ohio Dec. 19, 2007) ("where, as here, a class plaintiff successfully recovers a common benefit for the class, the costs of litigation should be spread among the beneficiaries").

Indeed, the percentage-of-the-fund method is appropriate in this case since Plaintiffs' Counsel undertook the representation on a contingent-fee basis, which is consistent with practice in the private marketplace, especially in wage-and-hour cases. *See, e.g., Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007). And this method more closely aligns the attorneys' interest in being paid a fair fee with the interests of the class in achieving the maximum recovery possible in the shortest amount of time. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (stating that the percentage of the fund method "encourages early settlement, which avoids protracted litigation"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (percentage method "provides a powerful incentive for the efficient prosecution and early resolution of litigation").

In contrast, the so-called "lodestar method," which multiples hours worked by hourly rates, "provides incentives for overbilling," *Rawlings*, 9 F.3d at 517, and "does not reward early settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002).[2] Moreover,

---

[2] Using a lodestar analysis, sometimes plaintiffs' counsel will make money against the hourly value of their time and sometimes they will lose money. If lawyers expected to receive a fee based upon their time (such as a maximum or an expected 2x multiplier) -- rather than based upon the size of the successfully-obtained settlement fund -- their interests and those of the class will diverge as the case progresses. That is why, for instance, perhaps the most recent serious consideration of current fee jurisprudence, that found in the American Law Institute's Principles of Aggregate Litigation, stated as the proper principle:

> (b) Subject to subsection (c), a percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement. The court can consider using the 'lodestar' approach as a cross-check, particularly when the value of the judgment or settlement is uncertain.
>
> (c) Other than its use as a cross-check, or its use in cases seeking solely injunctive or declaratory relief, the lodestar method should be limited to:

the percentage method preserves judicial resources because it permits courts to focus on the benefit conferred upon the class rather than the cumbersome task of reviewing complicated and lengthy billing documents. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995) ("[T]he [percentage of the fund] method permits the judge to focus on a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts."); *Rawlings*, 9 F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources."). Indeed, "[u]nder the percentage of the fund method, the court simply determines a percentage of the settlement to award the class counsel." *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 922 (N.D. Ohio 2003).

Here, Plaintiffs request a one-third (*i.e.,* 33 $^{1/3}$ %) fee award, which is commensurate with every comparable wage and hour settlement in this area of which we are award. *See Swigart,* 2014 U.S. Dist. LEXIS 94450 (approving 33% fee in $4 million settlement); *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012) (approving 52% fee in $455,000 settlement); *Applegate-Walton v. Olan Mills, Inc.*, 2010 U.S. Dist. LEXIS 77965 (approving 33.3% fee in $3,000,000 settlement); *Rotuna v. West Customer Mgmt. Grp., LLC*, 2010 U.S. Dist. LEXIS 58912 (N.D. Ohio June 15, 2010) (approving 33% fee in $225,000 settlement); *Dillworth v. Case Farm Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010) (approving 33% fee; amount of settlement is sealed); and *Bessey v.*

---

(1) situations in which the fees will be awarded under a fee-shifting statute that requires the lodestar method, or

(2) cases in which the court makes a specific finding that the percentage method would be unfair or inapplicable based on the specific facts of the case.

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13(b), (c) at 248-49 (2010). Neither of these exceptional circumstances is present here.

*Packerland Plainwell, Inc.*, 2007 U.S. Dist. LEXIS 79606 (W.D. Mich. Oct. 26, 2007) (approving 33% fee in $669,000 settlement).

Application of the so-called "*Ramey* factors" also support the reasonableness of the one-third fee request in this case. In *Ramey v. Cincinnati Enquirer, Inc.*, the Sixth Circuit set forth six factors relevant to the determination of the reasonableness of attorney fees: (1) the value of the benefit rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. 508 F.2d 1188, 1196 (6th Cir. 1974), cert. denied, 422 U.S. 1048 (1975). All six of these factors support the attorneys' fees requested here.

> 1. *The Results Achieved in this Litigation are Substantial*

Courts consistently have recognized that the results achieved for the benefit of the class on whose behalf the action was brought is one of the most important factors to be considered in making a fee and expense award. *Hensley v. Eckhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"). By all measures, the value of the benefit created for the Settlement Class is substantial and fully supports the requested fee.

Claimants will receive, on average, a net amount of $6,352.90. Baldwin Decl., ¶12. These results tower over recent FLSA misclassification settlements and represents substantial value to class members. Although every case is different, by comparison, *gross* recoveries in other hybrid managerial misclassification class/collective action settlements in recent years have been $1,561 (*Alli v. Boston Market Corp.*, No. 10-cv-0004 (D. Conn.) (restaurant chain store assistant manager misclassification case; final approval obtained April 17, 2012 for $3 million for 1,921 class members)); $1,771 (*Jenkins v. Sports Authority*, No. 09-cv-224

5

(E.D.N.Y.) (final approval obtained September 30, 2011 for $990,000 settlement for class of 559 co-managers)); $3,264 (*Caissie v. BJ's Wholesale Club*, No. 08-cv-30220 (D. Mass.) (final approval obtained June 24, 2010 for $9.15 settlement for class of 2,803 "mid-managers")); $1,161 (*Ferreira v. Modell's Sporting Goods, Inc.*, No. 11-cv-2395 (S.D.N.Y.) (final approved obtained March, 12, 2015 for $800,000 settlement for class of 689); $4,909 (*Lapan v. Dick's Sporting Goods, Inc.*, No. 13-cv-11390 (D. Mass.) (final approval obtained April 19, 2016 for $10 milloin settlement for class of 2,307 people)). Similarly, in case, an assistant manager $34 million settlement, the average class member gross recovery was $1,760, a result District Judge McConnell termed "magnificent" at the final approval hearing. *Nash v. CVS Caremark Corp.*, 1:09-cv-00079 (D.R.I.) (final approval order dated Apr. 9, 2012). The $6,350 average *net* recovery here stands as a fair, reasonable, and adequate – if not exceedingly favorable result – compared to these other similar cases.

Inasmuch as the result achieved is an important factor to be considered in assessing the propriety of an attorneys' fee award, this settlement certainly meets this standard. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"). In addition, Class Counsel, well-experienced in cases of this kind, *see* Legando Decl. at ¶¶28–33, believe that the representation here has been tenacious and successful.

Furthermore, the results obtained are excellent when considered against the risks that existed. Proceeding to trial in this litigation would have carried with it significant risk. Legando Decl. at ¶¶18-20. For instance, Plaintiffs faced a potential denial of conditional certification, or later decertification and denial of class certification. Plaintiffs also faced the risk of a summary judgment ruling finding Plaintiffs to be properly classified as exempt under the executive exemption and/or motor carrier exemption. *Id.* Even if Plaintiffs defeated decertification and summary judgment, they still could have lost at trial on the ultimate merits issue as to whether

6

Supervisors are properly exempt and, if so, the appropriate measure of damages. AVI, moreover, has steadfastly maintained that it would prevail on the willfulness and good faith issues, thereby potentially removing a third year from any potential damages calculations and potentially removing the possibility of liquidated damages. *Id*.

Given the risks inherent in this litigation and the exceptionally high recovery per class and collective action members, the settlement represents a significant recovery and brings enormous benefit to the class and collective. This factor strongly supports granting the fee requested.

### 2. The Fee Requested Provides Adequate Incentive to Undertake this Representation for the Benefit of Others

"There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 7829, at *36 (S.D. Ohio Jan. 25, 2011); *see also In re Sulzer Hip Prosthesis & Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d at 936 ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling … claimants to pool their claims and resources to achieve a result they could not obtain alone") (quoting *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001)). As such, "[a]dequate compensation is necessary to encourage attorneys to assume the risk of litigation in the public interest." *Connectivity Sys.*, 2011 U.S. Dist. LEXIS 7829, at *36-37 (citations omitted).

Because society often places a premium when meaningful results are achieved on behalf of those who otherwise would go unrepresented, Class Counsels' requested fee is appropriate. "[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, No.

7

07 Civ. 430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011). Accordingly, "[e]ncouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society." *Whitlock v. FSL Mgmt., LLC*, No. 10 Civ. 00562, 2015 WL 9413142, at *9 (W.D. Ky. Dec. 22, 2015); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467, at *69-70 (N.D. Ohio Sep. 23, 2016).

As further relevant here, the FLSA and the Ohio state laws are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of these statutes. Otherwise, highly-skilled counsel would shy away from risky and expensive litigation (like this case) and employees seeking to have their rights vindicated would have difficulty obtaining qualified counsel.

There can be no doubt the proposed settlement represents a substantial and meaningful result for the settlement class and collective. Public policy therefore supports approving Class Counsel's request for fees.

### 3. *Class Counsel Undertook this Representation on a Contingent Basis*

When Class Counsel agreed to undertake this litigation, they did so on a contingent basis. Legando Decl. at ¶¶24-26. Class Counsel advanced all costs and, as the fee agreements provide, had there been no recovery, Class Counsel would not have been paid a fee or reimbursement of their expenses. Class Counsel should be compensated for this risk. *Lonardo,* 706 F. Supp. 2d at 796 (fee award should account "for the substantial risk an attorney takes

8

when he or she devotes substantial time and energy to a class action despite the fact that it will be uncompensated if the case does not settle and is dismissed."); *In re Whirlpool*, 2016 U.S. Dist. LEXIS 130467, at *68-70 (on a purely contingent basis, "counsel has borne all the risk . . ., including the prospect . . . that the investment . . . would be lost").

Class Counsel are experienced class action attorneys with active and successful class action practices. Legando Decl. at ¶¶28-32. The risks they undertook were real, and the resources that Class Counsel dedicated to this action – more than 485.15 hours and $17,750 in expenses – meant that such resources were not available to other cases. Accordingly, Class Counsel's contingency risk, together with the excellent result that has been achieved on behalf of the class and collective, supports the requested fees and costs. *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at * 22-24; *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at * 21.

The propriety of the requested fee under a percentage-of-the-fund approach is confirmed by a cross-check of Class Counsels' lodestar. *Bowling,* 102 F.3d at 780. Achieving the $1,500,000.00 settlement required significant effort by Class Counsel. At the outset of the representation, Plaintiff's Counsel investigated and evaluated the claims, the damages to which the collective and class action members were entitled, and the propriety of collective action certification. Legando Decl. at ¶25. This work included conducting significant legal research into the motor carrier exemption and white collar exemptions. Plaintiff's Counsel obtained and reviewed documents from Supervisors and from publicly available sources. *Id.* Plaintiff's Counsel also conducted in-depth interviews of Supervisors, prepared and filed a Stipulation for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b), processed and filed with the Court multiple opt-in consent forms, communicated with scores of opt-in Plaintiffs, prepared and served written discovery requests, prepared responses to Defendant's written discovery requests, engaged in pre-mediation informal discovery, prepared a detailed mediation brief,

9

analyzed payroll data to perform a detailed damages analysis, attended a full-day mediation, and negotiated the settlement. *Id.* Prior to settlement, Plaintiff's counsel vigorously litigated these claims. *Id.*

Class Counsel expended significant resources to investigate, file, litigate, and attempt to resolve the matter: co-counsel firms' attorneys, staff, and paralegals worked approximately 485.15 hours on this matter to date, or an aggregate lodestar of approximately $273,703.25. Legando Decl. at ¶24. These hours are reasonable and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff member participating in the case. *Id.* Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it. *Id.* at ¶26.

Moreover, the requested fee is not based solely on time and effort already expended. It should also compensate Class Counsel for time that will be spent administering the settlement in the future. *See* Legando Decl. at ¶27; *cf. In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347 (S.D.N.Y. 2014) (noting that time records submitted with fee petitions "exclude[] time . . . that will be spent administering the settlement"). In Class Counsel's experience, administering settlements of this nature requires an ongoing commitment. Legando Decl. at ¶27. As is common in wage and hour collective actions, Class Counsel expects to respond to inquiries from class members after approval of the settlement. *Id.*

Here, Class Counsel's request for one-third of the Gross Settlement Amount, or $500,000, would result in a 1.83 multiplier of their $273,703 lodestar. This reasonable multiplier further demonstrates the reasonableness and fairness of Class Counsels' fee request. *See, e.g, In re: Oral Sodium Phosphate Solution – Based Products Liability Action*, 2010 U.S.

10

Dist. LEXIS 128371 (N.D. Ohio, Dec. 6, 2010) (applying a multiplier of 2.0); *Barnes v. Cincinnati*, 401 F.3d 729 (6th Cir. 2005) (upholding the use of multiplier of 1.75); *Rawlings*, 9 F.3d at 517 (applying a 2.0 multiplier given the modest results achieved); *In re: Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 938 (N.D. Ohio 2003) (court applied a multiplier of 2.4).

### 4. *The Complexity of the Litigation Supports the Requested Fee*

Wage and hour collective actions are "frequently complex matters." *Gentrup*, 2011 WL 2532922, at *4; *see also Beckman*, 293 F.R.D. at 479. Moreover, certifying a collective to afford nationwide relief, as well as a class, is a significant undertaking in terms of sophistication and risk. In this case, Plaintiffs and Defendant agree that there are numerous disputed issues of fact and law. Among them were, as noted, whether (1) Supervisors were exempt from the overtime provisions of the FLSA and Ohio law under the executive exemption and motor carrier exemption and their state law equivalents; (2) AVI acted willfully (*i.e.*, recklessly) in classifying Supervisors as exempt from the overtime laws; (3) the case could proceed to trial on a collective or class action basis; and, (4) assuming liability, what the correct method is for determining and calculating damages. Because Defendant had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to obtain maintain certification in each of the actions, an outcome of zero recovery for the Plaintiffs, the Collective, and the Class remained possible. Class Counsel accepted these risks, diligently prosecuted the case, and negotiated a meaningful and substantial recovery. Accordingly, this factor also supports Class Counsels' fee request.

### 5. *The Professional Skill of Class Counsel Supports the Requested Fee*

The "prosecution and management of a complex national class action requires unique

11

legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). Class Counsel are experienced class action litigators with substantial experience in representing employees and in litigating complex nationwide employment class and collective actions. Legando Decl. at ¶¶28-32. Class Counsel conducted an extensive factual and legal investigation into the relevant claims and issues in this litigation from its inception all the way through settlement Legando Decl. at ¶25. From the outset, Class Counsel litigated this action vigorously and skillfully, maximizing recovery for the benefit of the Settlement Collective and Class. We submit that as a result of Class Counsels' skills and diligence, a substantial settlement result has been reached for the Settlement Class. The quality of the work, and the efficiency and dedication with which it was performed, should be rewarded.

The quality of opposing counsel is also an important factor when evaluating the quality of the work done by counsel. See *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976). Here, Defendant was represented by Littler Mendelson, a highly-respected law firm with an extensive and premier employment practice who vigorously defended AVI in this case and who had significant resources and experience with which to represent the interests of their client.

Under these circumstances, "[t]he ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 U.S. Dist. LEXIS 87409, at *40 (quoting *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008)). Thus, this factor strongly supports the fees requested.

  **B.**  **Reimbursement of $17,750 in Litigation Expenses Is Appropriate**

In the Sixth Circuit, expense awards are customary where class counsel has created a common fund for the benefit of the settlement class. *In re Cardizem CD Antitrust Litig.*, 218

F.R.D. 508, 534 (E.D. Mich. 2003). "[U]nder the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *Id.* Class Counsel respectfully request to be reimbursed for out-of-pocket expenses totaling $17,750. Legando Decl. at ¶¶21-23.

This litigation was undertaken on a wholly contingent basis. *Id.* From the outset, Class Counsel understood that it was embarking on a complex, lengthy, and expensive litigation having relatively limited prospective damages and with no guarantee of compensation. In determining to pursue this action, Class Counsel were obliged to ensure that sufficient resources were dedicated to the prosecution of this litigation and that funds were available to advance out-of-pocket costs. Class Counsel did, in fact, advance these costs despite the fact that there was no assurance that the Class would recover against Defendant.

Class Counsel have advanced $17,750 in un-reimbursed costs to date in prosecuting this case. *Id.* This includes, *inter alia,* the cost of court fees, service fees, notice fees, air travel, meals and lodging, mediation expenses, and mailing expenses. All of the costs and expenses advanced by Class Counsel, which have benefited all Class members in this litigation, are of "the type routinely billed by attorneys to paying clients in similar cases." *In re Synthroid Marketing Litig.,* 264 F.3d 712, 722 (7th Cir. 2001).

### C. The $5,000 Service Payments to the Lead Plaintiffs Are Proper

It is common for courts to grant service payments to representative plaintiffs who have been able to effect substantial relief for a class. *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("[T]here is something to be said for rewarding those [plaintiffs] who protest and help to bring rights to [others]"); *In re Cardizem*, 218 F.R.D. at 535 (noting that

service payments "are common in class actions"). Class Counsel request that the Court approve a service payment of $5,000 to the Representative Plaintiffs Mooneyham and Sleve. Without their valuable assistance and participation, this case would not have been initiated. Legando Decl. at ¶34. They provided key information to Class Counsel that regularly made themselves available to meaningfully assist in investigating, filing, litigating, and ultimately resolving this action. In light of these substantial efforts, done for the benefit of the Class and Collective, the $5,000 service payments are eminently reasonable and well supported by applicable case law. *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) (approving service payments of $50,000 to each of the six class representatives); *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving five service payments between $35,000 and $55,000 to class representatives); *Basile v. Merrill Lynch. P.F. & S.*, 640 F. Supp. 697, 702 (S.D. Ohio 1986) (court awarded $948,000 in service payments for representative plaintiffs and intervening plaintiffs from a $12.6 million settlement fund). The rationale is particularly compelling in in employment cases such as this, where employees are wary of coming forward, the "plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. . . ." *Tiro v. Public House Investments, LLC*, 2013 U.S. Dist. LEXIS 129258, at *32-33 (S.D.N.Y. Sept. 10, 2013) (citations omitted).

The requested service payment is reasonable to compensate the Representative Plaintiffs for their substantial time, effort, and expense they invested to bring this litigation to a favorable settlement on behalf of the Class and Collective. Class Counsel, therefore, request that the Court authorize service payments of $5,000 to Plaintiffs Mooneyham and Sleve.

### D. The $9,500 Administration Costs Are Reasonable

In connection with the settlement, the Claims Administrator, RG2, reasonably estimates

its total costs in connection with administering this Settlement to be a capped amount of $9,500. Baldwin Decl. at ¶15. The settlement agreement was explicit that Class Counsel would seek payment of all costs of the Claims Administrator in an amount not to exceed $9,500. Such costs include the notice and administration of the notice and claims, addressing deficiencies, handling tax withholding matters and responding to inquiries, and Class Counsel find the costs to be reasonable and expected. *See* Legando Decl. at ¶35. No objections from the Class Members have been made to this request. Class Counsel request that the Court authorize payments to cover costs of the Claims Administrator up to $9,500.

### III. CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that this Court issue an order (1) awarding attorneys' fees to Class Counsel in the amount of $500,000; (2) reimbursing Class Counsel the reasonably incurred costs of $17,750; (3) awarding a service payment of $5,000 to the Representative Plaintiffs Mooneyham and Sleve and (4) approving the requested fees of up to $9,500 for the Claims Administrator.

Dated May 3, 2018                                   Respectfully submitted,

*s/ Drew Legando*
Drew Legando (0084209)
Jack Landskroner (0059227)
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@lgmlegal.com
   jack@lgmlegal.com

Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573

        T. (914) 934-9200
        F. (914) 934-9220
        E. seth@klafterolsen.com
           fran@klafterolsen.com

Nicholas A. Migliaccio
Jason Rathod
MIGLIACCIO & RATHOD LLP
412 H Street NE
Suite 302
Washington, D.C. 20002
T. (202) 470-3520
F. (202) 800-2730
E. nmigliaccio@classlawdc.com
E. jrathord@classlawdc.com

*Counsel for Plaintiffs*

### PROOF OF SERVICE

    A copy of this document was served by the Court's ECF System on counsel of record on May 3, 2018, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

    Signed by,

*s/ Drew Legando*
Drew Legando (0084209)

16